Plummer **GIDDINGS**, Plaintiff-Appellant,

v.

Elliot L. **RICHARDSON**, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 72–2081.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1973.

Decided May 17, 1973.

Frank W. Wilson, District Judge, dissented and filed opinion.

Edward M. Welch, Jr., Muskegon, Mich., for plaintiff-appellant; McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock, P. C., Muskegon, Mich., on brief.

Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., for defendant-appellee; John Milanowski, U. S. Atty., W. D. Michigan, Grand Rapids, Mich., on brief.

Before EDWARDS and PECK, Circuit Judges, and WILSON,* District Judge.

EDWARDS, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the Western District of Michigan affirming the denial of Social Security disability benefits. The Hearing Examiner and the Appeals Council of the Department of Health, Education and Welfare found "impairments due to a respiratory condition, a back condition and other conditions," but held such conditions not sufficiently severe to preclude all substantial gainful activity for twelve months.

Appellant is a 57-year-old former factory worker from Muskegon, Michigan, who claims disability benefits partly because of back injuries with respect to which undisputed medical evidence indicates that he is disabled from heavy lifting. More particularly, he asserts that he is disabled because of pulmonary problems defined medically as chronic bronchitis and emphysema. He asserts that there is no substantial evidence to support the adverse decisions of the Department and of the District Court.

We believe that this case is controlled by this court's decision in Whitson v. Finch, 437 F.2d 728 (6th Cir. 1971), and we reverse.

The background facts in this record are agreed upon by the parties as follows:

Plummer Giddings was born on October 26, 1915. He completed eight grades of education. After leaving the eighth grade, he worked on a farm until age 20, at which time he worked for a government survey on Lake Huron for approximately one year. Thereafter he worked for Brunswick Corporation and Norge Machine Company, both of Muskegon. He worked for Continental Motors Corporation of Muskegon from May 29, 1943, until February, 1969. His employment in the latter three jobs was that of a machine operator.

Mr. Giddings also repaired machinery and learned to read and work from blueprints during his working career.

Prior to 1964, Mr. Giddings was in relatively good health and not under the regular care of any doctor. In 1964 Mr. Giddings developed problems with breathing, was hospitalized and was diagnosed as having pneumonia. He has been plagued by breathing problems and frequent colds and has been "on and off work ever since." Mr. Giddings left Continental Motors in February, 1969, and has not been gainfully employed since that time. He has been receiving retirement benefits from Continental Motors Corporation based on disability.

In August of 1969, Mr. Giddings injured his back while getting down from a pickup truck. This resulted in an aggravation of a back injury which he had received in about 1947.

Mr. Giddings testified that since February of 1969, he has spent most

---

* Honorable Frank W. Wilson, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

of his time at home or walking in his yard. He watches some television and does not regularly attend any clubs or social organizations. He has no particular hobbies. He is unable to do any hunting or fishing, although he did some in the past. He is able to drive a pickup truck but does not drive any long distances. He does a little gardening in a small portion of his property. He cuts his own grass but is not able to do it all in one day.

Mr. Giddings testified that he would not be able to return to any job which he has previously held. He indicated that the dust and fumes at Continental Motors would prevent him from working there. He indicated that the same would be true with respect to work he performed at Norge Machine and at Brunswick. He indicated that the cold weather and draft would prevent him from doing the survey work which he performed for the government. He indicates that his back would prevent him from engaging in farming.

The dispute in this case really arises out of evaluation of medical reports submitted by the opposing parties. As we read the record, it appears to us that appellant has made a strong prima facie case of disability under the terms of 42 U.S.C. § 423(d)(1)(A) (1970).[1]

1) His last employer, Continental Motors, forced his retirement on the basis of disability before he would have been able to retire otherwise.

2) Dr. Emil J. Lauretti, who examined appellant for Continental and recommended his being retired, entered the following findings:

*ON EXAMINATION:* The patient is 6'½" tall and weighs 213 pounds. His blood pressure is 150/110.

PUPILS—Are round, regular and equal and react to light and accommodation.

EAR, NOSE AND THROAT—Revealed no pathology. He had full range of the neck muscles, and could move his head in all directions.

CHEST—There was a slight amount of wheezing, but as I had this man exercise in my office by assimilating running, after about one minute of active exercise he did begin to wheeze, he began to cough, his blood pressure went up to about 180 and he became extremely short of breath. These were actual objective findings. This patient could not put on the shortness of breath or the wheezing he had. It was very much like an asthmatic type of breathing that could be heard throughout both lung fields and both sides of the chest. He did state that whenever he does any amount of work which requires bending or lifting he becomes somewhat short of breath and begins to cough and wheeze.

I also checked his back and this man has findings which would indicate he has chronic muscular bruising in his back. On straight leg raising he could raise his left leg to the full range of motion at the hip joint, but could only raise his right leg to about seventy degrees and then complained of pain in his back. As he attempted to place his right heel on his left kneecap, he complained of pain in his back, but when he reversed this and placed his left heel on his right kneecap he had no trouble. As one flexed the right leg on his abdomen and pushed down on the left thigh toward the floor, he complained of pain in his back.

REFLEXES—The biceps, triceps, patellar and achilles reflexes were bilaterally present and equal, although

---

1. (d)(1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .
42 U.S.C. § 423(d)(1)(A) (1970).

the achilles reflexes were somewhat sluggish. These tests would indicate this man has muscular pathology on the right side of his back.

FAMILY HISTORY: The patient states he is divorced. He did raise nine children. He is married for the second time and is living with his second wife. He has been at the hospital on several occasions. The last time he was in Henry Ford Hospital from May 1 to May 9 in 1969 because of his chest. He also was at the Osteopathic Hospital in 1964 for almost a month because of a heart attack.

X-rays of his chest are normal. In spite of x-ray findings, I do not think this man is able to work except at a desk job where he would have to do no physical exercises. Any type of work that would require exertion on his part would cause him to wheeze and cough.

I feel he is disabled from the field of ordinary labor and should be retired.

3) His own physician who had seen and treated him regularly for many years said:

Mr. Giddings has an intractable pulmonary deficiency that has necessitated his being totally and permanently disabled.

We have treated him for this condition for years and have been unable to clear it up, and he has gotten no relief or help at the Ford Hospital, or with Dr. Swedenberg.

There are various medical reports introduced in the administrative file as government exhibits which fail to deal with the question of appellant's ability to work. The government appears to rely upon the fact that these reports do not say that appellant is completely and permanently disabled. Such reliance upon the absence of disability testimony in some medical reports to rebut a prima facie case of disability is misplaced.

In Whitson v. Finch this court said:

The facts in this record are: first, appellant's two treating physicians flatly stated that he was disabled from working for over a 12-month period of time; and, second, the government's examining physician never said that appellant was able to go to work at any job. Whitson v. Finch, 437 F. 2d 728, 732 (6th Cir. 1971).

See also Colwell v. Gardner, 386 F.2d 56 (6th Cir. 1967); Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967); Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965).

We have not overlooked the fact that one physician, Dr. Donald R. Eck, an orthopedic surgeon, marked a Functional Residual Capacity Report form supplied him by the government so as to indicate that appellant was capable of performing "sedentary work." Dr. Eck's report, however, makes clear that he was asked to and did evaluate only appellant's "back impairment condition" and that he never purported to examine or comment on the bronchial and pulmonary problems upon which appellant primarily relies.

The government relies strongly in its argument for affirmance upon Floyd v. Finch, 441 F.2d 73 (6th Cir. 1971). In that case, however, this court's opinion in reviewing the record found (with one judge dissenting) substantial medical evidence to support the denial of Floyd's disability claim. The majority opinion summarized the medical record supporting the government's case as follows:

The medical evidence submitted by the Secretary was essentially that claimant had mild arthritis which would not prevent him from engaging in substantial gainful activity. It was also to the effect that his subjective symptoms were not supported by the clinical findings. Dr. Ray stated that his subjective symptoms were far out of proportion to the objective findings. Floyd v. Finch, supra at 75.

We find no such evidence in our instant appeal.

■ Contrary to the view expressed by the dissent in this case, we find no conflict between our holding and the regulation adopted by the Secretary of

Health, Education and Welfare cited and quoted therein. We fully agree that: "The weight to be given such physician's statement [referring to ability to work] depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments." 20 C.F.R. 404.1526 (1972). In our view plaintiff's prima facie case did present such "specific and complete clinical findings" to support his doctor's conclusion that he was unable to work. To meet such a prima facie case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment. In Whitson v. Finch, *supra,* we made this point as follows:

> Appellant had made a prima facie case. To overcome such a case with medical witness testimony alone, the medical expert must at least be prepared to commit his professional opinion as to whether or not appellant is capable of working and as to what he can do. Anything less is not in our view "substantial evidence." Whitson v. Finch, *supra,* 437 F.2d at 732.

The judgment of the District Court is reversed and the case is remanded for entry of an order awarding disability benefits.

WILSON, District Judge (dissenting).

As I read the record in this case, I find what I interpret to be substantial evidence to sustain the decision of the District Court. Accordingly, I must respectfully dissent from the majority opinion.

This case presents the not infrequent claim of disability based upon a combination of lung and back impairments. While, in light of the claimant's age, limited education, employment experience and medical history, I agree with the majority opinion when it states that a prima facie case of disability was made out by the claimant, I nevertheless find in the record what I believe to be quite substantial evidence to support the Hearing Examiner's findings, as approved by the District Court, namely, that the claimant was not under such "disability" as to be entitled to disability benefits under the Social Security Law.

Substantial evidence, while admittedly a rather subjective standard, is nevertheless definable. As usually defined, "substantial evidence (is) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . enough to justify, if the trial were to a jury, a refusal to direct a verdict . . . ." National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S. Ct. 501, 83 L.Ed. 660 (1939). See also Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965). Stated in other terms: "Substantial evidence means more than a scintilla; it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Combs v. Gardner, 382 F.2d 949 (6th Cir. 1967). Applying either or both of these definitions to the record in this case, I find substantial evidence to support the decision of the lower court.

The medical record upon which this case must largely be decided consists of the report of three medical doctors, two doctors of osteopathy, two radiologists and one doctor of Chiropractic. As I analyze those reports, the reports of Dr. Lauretti, M.D., and Dr. Scheerer, D.O., would support the claim of disability. All the remainder of the reports, including all clinical findings other than those stated in Dr. Lauretti's report, would support a claim for partial disability only. For example, Dr. Clawson, M.D., who made the most recent medical examination of the plaintiff (April 27, 1971), reported in part that:

> ". . . If he takes his time he can walk any distance. He can't run more than half a block . . . Heart is normal in size, regular sinus rhythm, without murmur and all peripheral pulsations are present and equal

. . . The back functions seem to be normal and the straight leg raising test is negative . . . The chest x-ray revealed no pulmonary active disease and no cardiac enlargement . . . The pulmonary function studies were considered to be normal . . . There is no acute change and no evidence of a former infarction . . ."

Relying principally upon the case of Whitson v. Finch, 437 F.2d 728 (6th Cir. 1971), the majority opinion, as I read it, would disregard all medical and clinical findings adverse to the plaintiff's claim as well as the testimony of the vocational specialist, upon the ground that the medical witnesses failed to express any opinion upon the work disability of the claimant. I would prefer to confine the holding in the *Whitson* case to the facts of that case. To the extent that the case purports to establish a rule that medical witnesses must express an opinion of work disability or otherwise have their findings discounted as insubstantial evidence, I believe the holding in the *Whitson* case to be in direct conflict with an applicable regulation duly adopted by the Secretary of Health, Education and Welfare. See 20 C.F.R. 404.-1526, wherein it is provided:

> The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, "disabled," "permanently disabled," "totally disabled," "totally and permanently disabled," "unable to work," or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.

I believe the foregoing regulation is a lawful and valid one. If so, it is binding upon this Court. Public Utilities Commission v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470, reh. denied 356 U.S. 925, 78 S.Ct. 713, 2 L.Ed. 2d 760; Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292. If this line of reasoning is valid, as I believe it is, I would confine Whitson v. Finch, *supra*, to the facts of that case and either overrule the rule of evidence therein announced or modify that rule to accord with 20 C.F.R. 404.1526. I would also affirm the decision of the District Court in this case as being supported by substantial evidence upon the record before us.