755 F.2d 931
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
VAULTERS ADKINS, PLAINTIFF-APPELLANT
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLANT.
 NO. 5647
 United States Court of Appeals, Sixth Circuit.
 1/30/85
 
 ORDER
 BEFORE: CONTIE and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Vaulters Adkins appeals from a district court judgment denying social security disability benefits. The district court found substantial evidence to support the Secretary's conclusion that Adkins can do a range of light or sedentary work, not requiring full use of the left arm, in a dust-free environment. We affirm.
 
 I.
 
 2
 Adkins originally filed this claim in 1973. His insured status expired on March 31, 1978. Before the latter date, he had worked for twenty-two years as a coal miner, for eight years as a self-employed coal trucker and for six weeks as a laborer in a soft drink bottling plant. The plaintiff claims to have experienced breathing difficulties, left shoulder and arm pain, lower back pain and left ankle pain. Although Adkins received a gunshot wound to the left shoulder when he was fourteen years old, he worked for approximately thirty years at the jobs already described after the wound was surgically repaired.
 
 
 3
 The first Administrative Law Judge (ALJ) to consider this case rendered a recommended decision on December 10, 1975. At that point the medical evidence showed that Adkins had chronic obstructive pulmonary disease and possible pneumoconiosis. Range of motion in the left shoulder was limited. Three doctors had concluded that the plaintiff should avoid dusty environments and two doctors had stated that he should not do heavy or arduous work. There was no objective evidence of a back or ankle problem. The ALJ held that Adkins retained capacity to perform his medium work as a laborer at the soft drink plant provided that the environment was dust free. The Appeals Council vacated and remanded on the ground that the plaintiff could do only light or sedentary work. The Council instructed the ALJ to receive testimony from a vocational expert regarding what jobs, if any, existed in the economy which Adkins could perform.
 
 
 4
 A second ALJ recommended on June 8, 1977 that benefits be denied. A vocational expert had identified jobs that Adkins could perform. The ALJ noted the absence of a back problem and only mild limitation on motion in the left ankle. Although the ALJ acknowledged that the plaintiff suffered from chronic pulmonary disease and could not engage in coal mining or other work in a dusty environment, the former ruled that even taking Adkins' breathing, shoulder and ankle problems into account, he still could perform light or sedentary work. The Appeals Council approved that decision.
 
 
 5
 On February 27, 1981, the district court vacated the Secretary's final decision on the ground that substantial evidence did not support the conclusion that Adkins could do light or sedentary work. The Secretary had merely inferred from medical reports stating that the plaintiff could not do heavy or arduous work that Adkins could do light or sedentary work. In view of the fact that the plaintiff had established a prima facie case, this inference was insufficient to satisfy the Secretary's burden of demonstrating residual functional capacity. Accordingly, the district court remanded for the taking of further evidence.
 
 
 6
 On remand, the parties placed two additional medical reports in the record. Dr. Stamper, a general practitioner, reported that Adkins was totally and permanently disabled because of chronic obstructive lung disease and the left shoulder problem. This conclusion was unsupported by clinical findings, however. Dr. Sutherland, an internist, found obstructive pulmonary disease, limited range of motion in the shoulder and normal range of motion in the left ankle. He also performed pulmonary function studies both with and without bronchodilators. Although the FEV1 and MVV readings resulting from the study performed without bronchodilators satisfied Sec. 3.02 of the Listings, see 20 CFR Sec. 404, Subpart P Appendix 1 (Listing of Impairments), the MVV reading obtained from the study performed with bronchodilators did not. Dr. Sutherland suggested that the plaintiff should avoid dusty environments.
 
 
 7
 A second vocational expert testified on remand. In response to a hypothetical question assuming that Adkins suffered from chronic obstructive pulmonary disease, had limited range of motion in the left shoulder to the extent found by Dr. Sutherland, and was unable to endure dusty environments, the expert testified that Adkins could perform forty percent of the light jobs in the national economy and fifty percent of the sedentary jobs. In response to a hypothetical question assuming the truth of all of Adkins' testimony, the expert testified that Adkins would be disabled.
 
 
 8
 After receiving the additional evidence, the ALJ ruled on September 7, 1981 that although Adkins had established a prima facie case, he could perform a significant number of light and sedentary jobs in the national economy. Hence, the ALJ recommended that benefits be denied. The Appeals Council agreed, adding that the pulmonary function study evidence did not satisfy the Listings. The district court upheld the Secretary's final decision and Adkins now appeals.
 
 II.
 
 9
 This court's review is limited, of course, to whether substantial evidence on the record considered as a whole supports the Secretary's decision. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Since Adkins established a prima facie case, however, the Secretary was required to demonstrate that Adkins retained residual capacity for substantial gainful employment in the national economy. Id., at 145; O'Banner v. Secretary of Health, Education and Welfare, 587 F.2d 321, 322 (6th Cir. 1978). With these standards in mind, we examine the evidence.
 
 
 10
 The first issue is whether the results obtained from the pulmonary function studies satisfied Sec. 3.02 of the Listings. Adkins is sixty-nine inches tall. In order for a person of that height to satisfy Sec. 3.02, the FEV1 reading must be equal to or less than 1.3 and the MVV reading must be equal to or less than 44. Since the MVV reading resulting from the study done with bronchodilators was 47, Adkins did not satisfy Sec. 3.02 of the Listings. Adkins contends that both the FEV1 and MVV readings resulting from the study done without bronchodilators satisfied Sec. 3.02. Although this is true, it is well established that an impairment that can be diminished by treatment may not serve as a basis for disability. See, e.g., Henry v. Gardner, 381 F.2d 191, 195 (6th Cir. 1967). Since the use of bronchodilators resulted in readings exceeding the values set forth in Sec. 3.02, Adkins is not disabled under the Listings.
 
 
 11
 The second issue is whether substantial evidence supports the Secretary's finding that the plaintiff can perform forty percent of the light jobs, and fifty percent of the sedentary jobs, in the national economy. We hold that substantial evidence is present in this case. The vocational expert specifically testified that Adkins can perform forty percent of all light jobs and fifty percent of all sedentary jobs even assuming that he suffers from chronic obstructive pulmonary disease, has limited range of motion in the left shoulder and should avoid dusty environments. Since there is no objective evidence of severe back or ankle impairments, those conditions did not have to be included in the hypothetical. The hypothetical question posed to the vocational expert accurately summarized the medical evidence of record. See Myers v. Weinberger, 514 F.2d 293 (6th Cir. 1975) (hypothetical questions must accurately summarize the medical evidence). Thus, the expert's answer constitutes substantial evidence underlying the Secretary's decision.
 
 
 12
 Adkins objects that the hypothetical question and response relied upon by the Secretary do not fully assume the truth of his subjective testimony. A hypothetical question assuming the presence of all conditions claimed by Adkins was asked and the vocational expert testified that Adkins would be disabled in that situation. The ALJ and the Secretary found, however, that the objective medical evidence did not support Adkins' testimony that his impairments prevent him from undertaking any substantial gainful employment. This finding is entitled to considerable deference. See Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978). On this record, we perceive no reason to disturb that determination. The plaintiff does emphasize the medical report in which Dr. Stamper opined that Adkins is totally and permanently disabled. Since this conclusion was wholly unsupported by clinical findings, however, the ALJ and the Secretary properly discounted the report.
 
 
 13
 Adkins also argues that no employer will hire him because of his impairments. Although the record supports this claim, the applicable regulations clearly state that whether employers would actually hire a given plaintiff is irrelevant in making a disability determination. 20 C.F.R. Sec. 404.1566(c). Finally, the cases of Giddings v. Richardson, 480 F.2d 652 (6th Cir. 1973) and Whitson v. Finch, 437 F.2d 728 (6th Cir. 1971), relied upon by Adkins, are distinguishable. In Giddings, the plaintiff made a prima facie case and the medical reports did not evaluate the plaintiff's residual functional capacity for work. The case holds that a finding of residual functional capacity may not be inferred from medical reports that are silent on the issue. In the present case, it is the vocational expert's testimony, not the medical reports, that established Adkins' residual functional capacity for light and sedentary work. In Whitson, two treating physicians stated that the claimant was totally disabled and a doctor retained by the government had no opinion on the residual functional capacity question. That situation was far different from the present case in which the examining physicians (who supported their conclusions with clinical findings) forbade only heavy or arduous work in dusty environments and in which the vocational expert specifically addressed the residual functional capacity issue.
 
 
 14
 The judgment of the district court is AFFIRMED.