Tommy L. SKINNER,
Plaintiff–Appellant,

v.

SECRETARY OF HEALTH & HUMAN
SERVICES, Defendant–Appellee.

No. 89–1604.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1990.

Decided March 8, 1990.

Gerald Benjamin (argued), Levine, Benjamin, Tushman, Bratt, Jerris & Stein, Southfield, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Thomas P. Turner (argued), Department of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill., Francis L. Zebot, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., for defendant-appellee.

Before KEITH and KRUPANSKY, Circuit Judges; and ENGEL, Senior Circuit Judge.

KEITH, Circuit Judge.

Plaintiff Tommy L. Skinner appeals from the district court's August 25, 1989 order granting summary judgment in favor of the Secretary. For the reasons set forth below, we REVERSE.

I.

A.

Mr. Skinner filed an application for disability benefits on October 14, 1986 pursuant to Section 205(g) of the Social Security

Act ("Act"), 42 U.S.C. § 405(g). He alleged disability commencing March 14, 1986, due to arthritis and musculoskeletal difficulties in the right shoulder and knee. His application was denied initially and on reconsideration by the Social Security Administration.

On July 10, 1987, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision entered September 15, 1987, the ALJ found that Mr. Skinner: is unable to perform his past relevant work on an assembly line; possesses a marginal education; and is capable of performing a limited range of light work. Thus, relying upon the vocational expert's testimony and the framework of Rule 202.10 of the Medical Vocational Guidelines ("Grids"), 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, the ALJ concluded that Mr. Skinner was not disabled and, therefore, denied his application for disability benefits. This decision was affirmed by the Appeals Council on January 11, 1988, and became the final decision of the Secretary.

Mr. Skinner filed suit in the United States District Court for the Eastern District of Michigan seeking judicial review of the Secretary's decision. Both parties filed motions for summary judgment. Mr. Skinner's suit was referred to a Magistrate for report and recommendation. On January 31, 1989, the Magistrate recommended reversal of the ALJ's decision denying disability benefits. The Magistrate concluded that in light of the medical and vocational evidence, the ALJ reached an incorrect determination of nondisability. The Magistrate explained that "[t]he evidence in the record simply does not support the ALJ's finding that [Skinner] had the equivalent of a marginal education." Magistrate's Report and Recommendation at 6, No. 88–CV–70826–DT (Jan. 31, 1989). Rather, the record indicates that Skinner is illiterate, and the Grids direct the conclusion that Mr. Skinner is disabled. 20 C.F.R. Part 404,

Subpart P, App. 2, Table 2, Rule 202.09. The Secretary filed a timely objection to the Magistrate's recommendation.

On April 25, 1989, the district court issued an order rejecting the Magistrate's recommendation and granting the Secretary's summary judgment motion. The district court found that substantial evidence exists to support the Secretary's decision. Mr. Skinner filed a timely notice of appeal.

B.

As both parties agree with the ALJ's evaluation of the medical evidence, our discussion will focus on the evidence pertaining to Mr. Skinner's literacy. At the time of the administrative hearing, Mr. Skinner was 50 years old. He was educated in a one-room school in rural Mississippi, and he testified that he attended school full-time until age 12 when he was required to commence seasonal field work. Thereafter, he continued his education on a part-time basis until age 17. Despite several years of school attendance, Mr. Skinner testified at the administrative hearing that he only completed the third grade.[1]

Mr. Skinner's testimony regarding the level of his reading, writing and mathematic skills is unambiguous—he cannot read a newspaper.[2] Record at 39 (Transcript of Administrative Hearing of July 10, 1987). Although he testified that he can sign his own name, he requires assistance when filling out social security forms. Id. When he took the written portion of his driver's license examination, the questions were administered to him orally. Id. at 39–40. Mr. Skinner has never held a job requiring reading or writing skills. Additionally, Mr. Skinner's mathematics skills are limited. When making a purchase, he has difficulty determining the amount of change that he is owed. Id. at 43. Generally, he transacts business with the assistance of others. Id.

1. The ALJ found Mr. Skinner's testimony regarding his education contradicted the information Mr. Skinner provided on his disability report. The disability report indicated that Mr. Skinner completed the eighth grade.

2. Despite Mr. Skinner's undisputed testimony to the contrary, the ALJ found that Mr. Skinner can read a newspaper. Record at 15 (decision of Administrative Law Judge Varga (September 15, 1987)). This finding is unsupported by the record.

On July 18, 1987, Samuel Goldstein, a certified rehabilitation counselor, administered a Wide Range Achievement Test ("WRAT") to Mr. Skinner to evaluate his reading, writing and computation skills. The test results show that Mr. Skinner reads below the third grade level; this score places him in the .7 percentile of the population for his age.

Mr. Skinner's computational scores placed him at the third grade level or the first percentile for his age population. Based upon Mr. Skinner's test results, Mr. Goldstein concluded, "[b]eyond reading a simple sign, which he might be familiar with, [Mr. Skinner] could not be expected to properly decode written material.... [E]ven his ability to accurately handle change is quite questionable. These limitations, which are significant, will clearly hinder this individual in terms of performing any type of work or training that would require even minimal math or reading capabilities." *Id.* at 138. Mr. Goldstein concluded that Mr. Skinner is functionally illiterate.

Dr. Arthur Carter, the Secretary's vocational expert, testified that a person who reads and writes on the third grade level is functionally illiterate. *Id.* at 69. He conceded that functional illiteracy and difficulty making change could impede Mr. Skinner in competently performing the job requirements for a gas station attendant.[3]

## II.

### A.

■ It is the duty of the Secretary to weigh the evidence; to resolve material conflicts; to make independent findings of fact; and to determine the case accordingly. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Our review of the Secretary's decision is limited to determining whether there is substantial evidence in the record, taken as a whole, to support the findings. *See Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

### B.

To gain entitlement to disability benefits under the Act, Mr. Skinner must meet a two-fold test. First, he must establish the existence of a medically determinable physical or mental impairment that can result in death, or that has lasted or can last for a continuous period of not less than twelve months; and second, he must show that the impairments render him unable to engage in any substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *Stille v. Weinberger*, 499 F.2d 244 (6th Cir.1974). Mr. Skinner has to show that he is disabled within the meaning of the Act. *Id.* at 246.

■ The Secretary conducts a sequential evaluation of disability claims pursuant to Title II of the Act. 20 C.F.R. § 404.1520. Under this five-step sequential evaluation process,[4] if the Secretary can make a dis-

---

3. Dr. Carter opined that a person with Skinner's physical limitations could work as a gas station attendant.

4. The Secretary evaluates a disability claim under Title II pursuant to the following five-step analysis:
   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;
   b. An individual who does not have a "severe impairment" will not be found to be disabled;
   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that

"meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
   d. If, upon determining residual functional capacity, the Secretary finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
   e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.
20 C.F.R. § 404.1520(b)–(f).

positive finding at any point in the process, then no further review is required. 20 C.F.R. § 404.1520(a). The goal of this sequential evaluation is the rational and fair determination of whether the claimant meets the underlying statutory test for disability, i.e., whether considering the person's age, education and work experience, a medically determinable impairment has rendered him unable to engage in substantial gainful activity existing in the national economy. *Salmi v. Secretary of Health & Human Services*, 774 F.2d 685 (6th Cir. 1985); *Farris v. Secretary of Health & Human Services*, 773 F.2d 85 (6th Cir. 1985).

### C.

■ On appeal, Mr. Skinner challenges the district court's finding that there is substantial evidence to support the ALJ's finding that Mr. Skinner received a marginal education and, therefore, is not disabled pursuant to 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.10. Skinner argues that the ALJ's determination at step five of the sequential evaluation was erroneous, because the record provides undisputed evidence that Skinner is illiterate. We find Mr. Skinner's argument persuasive.

The ALJ erroneously concluded that Skinner possesses a marginal education and, therefore, is not disabled. The record does not support the ALJ's characterization of Skinner's educational preparation. In fact, the record provides overwhelming evidence that Mr. Skinner is illiterate. Had the ALJ properly found Mr. Skinner illiterate, the Grids would have directed the ALJ to award Mr. Skinner benefits. 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.09.[5]

The Social Security Regulations explain that:

Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple

message such as instructions or inventory lists *even though that person can sign his or her name.* Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 404.1564(b)(1) (emphasis added).

In contrast, "marginal education" is distinguished from "illiteracy" in the Social Security Regulations:

Marginal education means ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a sixth grade level or less is a marginal education.

20 C.F.R. § 404.1564(b)(2).

The record is replete with evidence that Mr. Skinner is illiterate. Mr. Skinner's WRAT results indicate that he reads below the third grade level, and his math computation skills place him in the first percentile of his age population. Based upon Mr. Skinner's WRAT results and a vocational analysis interview, Mr. Goldstein concluded that Mr. Skinner is functionally illiterate. Moreover, Dr. Carter agreed that a worker who reads and writes at or below the third grade level is functionally illiterate.

Relying on the disability report Mr. Skinner filed on October 14, 1986, the ALJ concluded that Mr. Skinner is not illiterate. In his report, Mr. Skinner indicated that he completed the eighth grade. The ALJ noted that Mr. Skinner's testimony, that he completed "roughly about three" grades, contradicts the disability report. We find error in the ALJ's reliance upon the numerical grade indicated in the disability report as a basis for finding that Mr. Skinner possessed a marginal education.

A numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist. 20 C.F.R. § 404.1564(b); *see Boone v. Secretary of Health & Human Services*, 595 F.Supp. 758, 759 (E.D.Mich.1984) (the numerical grade level completed in school

---

5.  20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.09 directs a finding of disability at step five of the sequential evaluation for an illiterate person who is closely approaching advanced age

and who is unable to return to his past employment of unskilled labor. Mr. Skinner satisfies the requirements of this provision.

may not represent a claimant's actual educational abilities). As the record contained contradictory evidence regarding Mr. Skinner's completed grade level, reliance upon the WRAT results and the expert opinions of Mr. Goldstein and Dr. Carter would have led to the proper determination that Mr. Skinner is illiterate and, therefore, disabled under the Grids. 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.09.

### III.

Since Mr. Skinner's residual functional capacity precludes the performance of his past work, we find that other factors including his proximity to advanced age, his lack of transferable skills and his illiteracy support a finding of disability. For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with directions to award Mr. Skinner disability benefits.